José Ernesto Asencio, demandante y apelado, v. The American Railroad Company of Porto Rico, demandada y apelante.

Núm. 9207.—*Sometido:* Febrero 1, 1946. *Resuelto:* Junio 6, 1946.

*Mariano Acosta Velarde* y *Donald R. Dexter,* abogados de la apelante; *José Sabater* y *Carlos García Méndez,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Rafael Asencio, niño de ocho años de edad, hijo del demandante, fué arrollado por una locomotora de la Compañía demandada en momentos en que pasaba a pie por un camino o paso a nivel conocido como "Flag Stop Isabel Josefa", en el kilómetro 4-400, barrio Bajura, Cabo Rojo. El niño murió como consecuencia de las heridas graves que recibiera.

En la demanda radicada por el padre se alega que el accidente fué motivado únicamente por la negligencia del empleado de la demandada quien conducía la máquina a una velocidad exagerada y al acercarse al paso a nivel no tocó campana ni pitó ni dió señal alguna de su proximidad; y que aun cuando el maquinista hizo un esfuerzo extraordinario, tratando de detener el tren para evitar el accidente, no pudo lograrlo por causa de la velocidad exagerada, viniendo a ser detenida la máquina a una distancia como de doscientos metros del sitio del suceso.

Contestó la demandada negando específicamente los hechos esenciales de la demanda y alegando como defensas especiales: (*a*) que si en el accidente medió culpa o negligencia alguna por parte de la demandada, también medió la negligencia contribuyente del demandante o del menor, siendo ésta última la causa próxima, única e inmediata del accidente; y (*b*) que la muerte del menor fué el resultado de

un accidente desgraciado e inevitable, sin que mediara en el mismo culpa o negligencia por parte de la Compañía demandada.

La Corte de Distrito de Mayagüez, ante la cual se celebró la vista del caso, declaró probado a su satisfacción que el niño fué arrollado por la locomotora en los momentos en que cruzaba a pie por el paso a nivel "Flag Stop Isabel Josefa", "y que a la vez es un camino privado abierto al público"; que el menor murió como consecuencia de dicho accidente; que la máquina venía corriendo a mucha velocidad, muy ligero, antes de ocurrir el accidente, "sin tocar campana, pito o señal de alarma para anunciar su proximidad a dicho sitio que es un paso a nivel por donde cruza el público"; que la velocidad a que era conducido el tren quedó demostrada por el hecho de que el maquinista hizo esfuerzos para detener la locomotora y no pudo detenerla hasta una distancia de 200 a 300 metros más adelante del sitio donde fué arrollado el menor; que el maquinista no solamente no dió aviso alguno, sino que tampoco redujo la velocidad al acercarse al paso a nivel; y que la causa única próxima del accidente fué la culpa, descuido y negligencia de la Compañía demandada por medio de sus empleados.

La demandada apela de la sentencia condenándola a pagar una indemnización de $2,800, costas y $300 para honorarios de abogado.

Los cuatro primeros señalamientos pueden ser considerados conjuntamente por estar todos relacionados con la apreciación de la prueba relativa a la velocidad a que era conducido el tren antes y en el momento en que ocurrió el accidente.

La corte inferior no resolvió, como alega la apelante, que la demandada fué culpable de negligencia porque la máquina y los vagones no pudieron ser detenidos hasta una distancia de 200 ó 300 metros más allá del sitio en donde fué arrollado el niño. Lo que sí resolvió la corte fué que el hecho de que

la locomotora era conducida a gran velocidad y de que el maquinista hizo esfuerzos para detenerla "quedó demostrado por los chirridos de las ruedas del tren al serle aplicados los frenos y por no haber podido ser la máquina y los vagones que arrastraba detenida hasta una distancia de 200 a 300 metros más adelante del sitio donde fué arrollado el menor de edad Rafael Asencio Matos". La evidencia ofrecida para fijar la distancia recorrida por el tren después del accidente es contradictoria. Los testigos del demandante, a los cuales dió crédito la corte sentenciadora, estimaron esa distancia en unos doscientos metros. Los testigos de la Compañía la fijaron en cincuenta o sesenta metros. Era a la corte inferior, que tuvo ante sí a los testigos, a quien correspondía dirimir el conflicto. No vemos razón alguna para alterar sus conclusiones. *Vega* v. *American Railroad Company,* 57 D.P. R. 376.

Alega la Compañía apelante que la conclusión de la corte sentenciadora de que la demandada fué culpable de negligencia por no haber reducido la velocidad de su tren al acercarse al cruce, es contraria a derecho.

Copiaremos las palabras exactas de la corte inferior:

"Quedó asimismo claramente demostrado, por la prueba de la parte actora, a la cual esta Corte le da entero crédito, que en el paso a nivel donde ocurrió el accidente objeto de esta demanda, *la demandada no solamente no tocó aparato de alarma alguno, sino que tampoco redujo la velocidad al acercarse a dicho paso a nivel,* no habiendo la demandada por medio de sus empleados ejercido un grado razonable de cuidado para evitar el accidente ocurrido, y que la causa única del accidente de referencia fué la culpa, descuido y negligencia de la compañía demandada" . . . (Bastardillas nuestras.)

En el párrafo anterior al que acabamos de transcribir, la corte inferior declaró como hechos probados "que dicha máquina y tren de pasajeros venía corriendo a mucha velocidad antes y al ocurrir el accidente, sin tocar campana, pito o señal de alarma para anunciar su proximidad a dicho sitio, que era un paso a nivel por donde cruza el público".

Es evidente que la conclusión de que la Compañía demandada había sido negligente se basó en el alegado y probado incumplimiento por parte de sus empleados de la obligación que tiene toda compañía de ferrocarriles de tocar aparatos de alarma al acercarse a un cruce con un camino privado carretero usado por el público. La prueba demuestra que la demandada tenía conocimiento de que el camino era usado por el público, no solamente por los letreros que allí había colocado, si que también porque allí había una parada, "flag stop" para recoger pasajeros. Cuando por estatuto se fija una regla de conducta a ser cumplida por un ferrocarril en su cruce con una calle o camino, la violación de esa regla constituye negligencia *per se*.(¹) La manifestación adicional de que la demandada "tampoco redujo la velocidad al acercarse a dicho paso a nivel" es, además de innecesaria, claramente errónea toda vez que el deber de reducir la velocidad surge solamente antes de cruzar las calles. *Ferrer* v. *American Railroad Co.*, 39 D.P.R. 40, 45. Empero, el error cometido en nada ha podido perjudicar a la demandada, toda vez que la conclusión de que la Compañía había sido negligente al no tocar aparato de alarma alguno antes de cruzar el paso a nivel es por sí sola suficiente para justificar la sentencia recurrida.

Alega la apelante en su quinto señalamiento que la corte *a quo* cometió manifiesto error de derecho al no considerar y al dejar de resolver la defensa especial de negligencia contribuyente.

Es cierto que la demandada alegó como defensa especial que la causa próxima, única e inmediata del accidente fué la

---

(¹)Artículo 3 letra (*g*) Ley de Servicio Público de P. R.; *Marrero* v. *American Railroad Co.*, 33 D.P.R. 207; *Ferrer e Hijo* v. *American Railroad Co.*, 39 D.P.R. 40; *Vega* v. *American Railroad Co.*, 57 D.P.R. 376; *F. Solé & Co.* v. *American Railroad Co.*, 61 D.P.R. 752; *Ortiz* v. *American Railroad Co.*, 62 D.P.R. 181; 52 C.J. 250.

culpa y negligencia contribuyente del menor, sin especificar en manera alguna en que consistió la alegada negligencia. Pero no es menos cierto que la demandada no presentó evidencia alguna tendiente a demostrar que el niño había actuado negligentemente al tratar de cruzar la vía en el paso a nivel.

Habiendo resuelto que el accidente ocurrió en el paso a nivel y no habiendo dado crédito a la evidencia ofrecida en apoyo de la defensa de negligencia contribuyente, la corte inferior se limitó a resolver que "la causa única del accidente de referencia fué la culpa, descuido y negligencia de la Compañía demandada por medio de sus empleados y agentes" y que esa negligencia fué la causa próxima del accidente. De ese modo quedaba implícitamente resuelto que la defensa de negligencia contribuyente no había sido establecida.

En el caso de *Vega* v. *American Railroad Company*, supra, se trataba como en el presente de un niño de ocho años de edad que fué arrollado por un automóvil de vía que cruzó el paso a nivel sin dar aviso de su proximidad. La Compañía alegó la negligencia contribuyente del menor como causa próxima del accidente. La prueba demostró que el niño trató de cruzar estando las barreras bajadas. La corte sentenciadora resolvió que si se hubiera tratado de una persona *sui juris* la sentencia hubiera tenido que ser a favor de la demandada, pero considerando que se trataba de un niño de ocho años de edad, que no gozaba de una precocidad superior a la ordinaria de niños de su edad, resolvió que no podía exigírsele el mismo grado de cuidado que a un adulto. Confirmamos la sentencia a favor del menor, citando con aprobación el siguiente párrafo de la opinión de la corte inferior:

"... La negligencia contributoria es una defensa afirmativa. El peso de la prueba correspondía a la demandada. Y la

evidencia dista mucho de convencernos de que este niño pudiera tener la discreción suficiente para ser culpable de negligencia contributoria atendidas todas las circunstancias que concurren en este caso.''

Véase: *Castro* v. *González,* 58 D.P.R. 368, 381.

Aceptando que el niño Rafael Asencio tuviera el día del accidente ocho años y diez meses de edad y que fuera un niño saludable e inteligente, capaz de incurrir en negligencia contribuyente, siempre tendríamos que llegar a la conclusión de que no existe prueba o indicio alguno de que dicho niño actuara negligentemente al tratar de cruzar la vía. El conflicto en cuanto a si el accidente ocurrió cuando el niño trató de cruzar el paso a nivel, como alegó el demandante, o si ocurrió en otro sitio de la vía por donde el niño no tenía derecho a cruzar, como sostuvo la Compañía, fué resuelto a favor del demandante; y estando esa conclusión sostenida por prueba suficiente, es nuestro deber respetarla. Es cierto que el viandante que va a cruzar una vía férrea por un paso a nivel tiene la obligación de detenerse, mirar y oír antes de cruzar, pero es a la Compañía demandada a la que incumbe probar que el niño no cumplió con esa obligación. No podemos presumir que dejó de cumplirla, pues ello equivaldría a establecer como regla que la negligencia contribuyente se presume. Así como el demandante que alega la negligencia del demandado está obligado a probarla, del mismo modo está obligado el demandado a probar la negligencia contribuyente del demandante, cuando ésa es la base de su defensa. Véase: *Figueroa* v. *American Railroad Co.,* 64 D.P.R. 335.

Las conclusiones de la corte inferior son correctas y se ajustan a la evidencia y a la ley.

■■ Alega la demandada apelante que la corte inferior erró al permitir, no obstante su oposición, que se presentara evidencia sobre los daños y perjuicios sufridos por la madre del menor al conceder una indemnización de $2,800, ''estimando los supuestos daños y perjuicios sufridos por Carmen Matos, quien no fué ni era parte en la acción''.

La corte inferior hizo constar en su opinión que consideraba como hechos probados que tanto el demandante como su esposa han sido privados de y han perdido para siempre los servicios del hijo y que ambos han sido agobiados por intensa angustia y sufrimiento moral y mental como consecuencia de lo acaecido.

Del récord aparece que en contra de la oposición de la demandada, la corte permitió al demandante que declarase que después de la muerte de su hijo su esposa había estado enferma de cama, nerviosa y achacosa por un período de tres meses.

El inciso (j) de la Regla 17 de Enjuiciamiento Civil dispone que el padre y la madre, solos o conjuntamente, podrán entablar demanda por la muerte de un hijo menor de edad, cuando la muerte se deba al acto ilegal o negligencia de otro, *"Disponiéndose,* que la madre legítima o natural será siempre partícipe en la acción, en proporción igual al padre legítimo o natural reconocido''.

La prueba de los daños sufridos por la madre del menor era admisible, aun cuando ella no figurase como parte demandante en el título de la demanda, de conformidad con nuestra decisión en *Parrilla* v. *Loíza Sugar Co.,* 52 D.P.R. 241. La demanda original radicada por el padre del menor fué desestimada a virtud de una moción de *nonsuit,* siendo confirmada la sentencia por esta Corte Suprema en 31 de mayo de 1932. El padre demandante falleció en octubre de 1932; y en febrero de 1933 Inés Parrilla, madre del menor, radicó una nueva demanda en la cual se relataban los hechos en cuanto a la institución de la acción original por el padre y su terminación mediante moción de *nonsuit* y no por los méritos del caso. La corte de distrito ordenó la eliminación de dichas alegaciones y declaró prescrita la acción, por el fundamento de que la madre no era parte en el pleito incoado por el padre y que las alegaciones eliminadas eran im-

pertinentes y habían sido hechas con el propósito de evitar la defensa de prescripción de la acción. Al revocar la sentencia, dijimos:

"Si a tenor de las disposiciones del artículo 60 del Código de Enjuiciamiento Civil (edición de 1933) la esposa tiene una acción de daños y perjuicios por la muerte de su hijo menor de edad, independientemente de la acción concedida al marido, y viceversa, entonces la institución del pleito por uno de los esposos no obstruiría o suspendería el período prescriptivo en lo que a la causa de acción del otro se refiere. Bajo esas circunstancias la corte sentenciadora procedió correctamente al eliminar los párrafos arriba reseñados. Empero, si el artículo citado tan sólo concede una causa de acción, y cualquiera de los esposos, o ambos conjuntamente, pueden iniciar el recurso, entonces el presente litigio no habría prescrito.

"*               *               *               *               *               *               *

"En nuestra opinión, si hay algo durante la existencia del matrimonio en que tanto el padre como la madre tienen igual interés, ello es la prole. Como jefe de la sociedad de gananciales el padre está investido por ley de ciertos privilegios de administración. Como cabeza de familia está igualmente investido de ciertas prerrogativas sobre sus hijos menores de edad. Este tribunal ha resuelto en repetidos casos que la causa de acción proveniente de las lesiones causadas a la esposa corresponde a la sociedad de gananciales y debe ser entablada por el marido. Hemos ido aun al extremo de negarle a la esposa *status* ante los tribunales. *Vázquez v. Valdés*, 28 D.P.R. 467; *Vázquez v. P. R. Railway, Light & Power Co.*, 35 D.P.R. 62; *Irizarry v. Díaz*, 35 D.P.R. 144; *Dávila v. P. R. Railway, Light & Power Co.*, 44 D.P.R. 950.

"*               *               *               *               *               *               *

"Los daños y perjuicios a recobrarse por el padre y la madre por la muerte de un hijo menor de edad deben medirse por la pérdida pecuniaria causádales a virtud de tal muerte. Está más en armonía con los principios generales de la sociedad de gananciales el interpretar el artículo 60 en el sentido de que permite al padre o a la madre, o a ambos conjuntamente, presentar una demanda para recobrar la pérdida total sufrida por la sociedad. Desde luego, la interposición de una demanda por cualquiera de ellos sería un impedimento a la interposición de un recurso similar por el otro. El artículo 60 por sus propios términos dice:

" 'Disponiéndose, que la madre legítima o natural será siempre partícipe en la acción, en proporción igual al padre legítimo o natural reconocido; Y disponiéndose, además, que nada de lo establecido anteriormente se entenderá en violación de los derechos de herencia establecidos por el Código Civil y de las acciones que son consecuencia de los mismos.'

"El primer disponiéndose implica que la indemnización, aunque en él se usa la palabra 'acción,' corresponderá en partes iguales a los cónyuges. En lo que al último disponiéndose concierne, nos inclinamos a creer que éste se refiere al derecho de sucesión que tienen los herederos del menor, a cualquier causa de acción o *chose in action* que pueda corresponder a él personalmente por razón de sus lesiones o muerte.

"Hemos revisado los casos en que esta corte ha considerado hechos similares a los del presente, pero en ninguno de ellos hemos resuelto la cuestión específica que ahora está ante nosotros. En la mayoría de ellos el padre y la madre se unieron en el recurso, y en los otros el padre dedujo la demanda.

"Bajo el punto de vista que hemos asumido, creemos que la acción originalmente instruída por el marido interrumpió con éxito la prescripción de la causa de acción en favor de la sociedad de gananciales y que el pleito posteriormente entablado por la esposa como representante supérstite de la comunidad fué meramente la continuación del litigio anterior por una parte demandante debidamente sustituída. Resolvemos, por tanto, que la acción iniciada por el padre originalmente y la instada por la madre en 1933, que ahora se encuentra ante este tribunal en apelación, son recursos instruídos por la misma parte demandante, o sea por la sociedad de gananciales, representada en el litigio anterior por su administrador, y en el presente caso por su sucesora legal.

"Tan sólo existe una causa de acción, que quizá pueda ser ejercitada a veces indistintamente por cualquiera de los padres."

*La sentencia recurrida debe ser confirmada.*